# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DIANNE BUEHLER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>JETBLUE AIRWAYS CORPORATION and AMERICAN AIRLINES GROUP INC.,<br><br>        Defendants. | Docket No. 1:23-cv-10281-LTS |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER UNDER THE FIRST-TO-FILE RULE OR 28 U.S.C. § 1404(A)**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.     RELEVANT BACKGROUND ........................................................................2

    A.  Ms. Buehler has filed a detailed complaint on behalf of a putative class
        comprised of all parties injured by Defendants' misconduct, and advanced
        causes of action that encompass the full scope of Defendants' alleged
        wrongdoing ............................................................................................................2

    B.  Defendants urge this Court to subjugate Ms. Buehler's complaint to a narrower
        one ..........................................................................................................................4

III.    ARGUMENT ...................................................................................................5

    A.  The first-to-file rule is discretionary and does not support – much less
        mandate – that this Court forfeit a case it is already familiar with in favor of
        a narrower case in another district ..........................................................................5

        1.  Transfer of a class-action complaint is inappropriate where, as here, the
            complaint contains significantly broader allegations and theories of liability
            and seeks to vindicate the rights of a broader class compared to the
            competing complaint ..........................................................................................6

        2.  Special circumstances require keeping this action before this Court ...............9

            i.   The balance of convenience substantially favors keeping the litigation
                here, where the parties will benefit from this Court's hard work in the
                related DOJ Action ....................................................................................9

            ii.  The first-to-file rule should not reward a plaintiff that races to court .......12

    B.  Defendants' alternative transfer argument should also be rejected because the
        balance of convenience substantially favors keeping Ms. Buehler's action
        before this Court ..................................................................................................14

IV.     CONCLUSION.............................................................................................17

# TABLE OF AUTHORITIES

## Cases

*A123 Sys., Inc. v. Hydro-Quebec*,
  657 F. Supp. 2d 276 (D. Mass. 2009) ...................................................................... 17
*Adoma v. Univ. of Phoenix, Inc.*,
  711 F. Supp. 2d 1142 (E.D. Cal. 2010) ...................................................................... 7
*Albion v. YMCA Camp Letts*,
  171 F.3d 1 (1st Cir. 1999) ............................................................................ 14
*Amorosa v. Gen. Elec. Co.*,
  No. 21-cv-3137, 2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) ............................................ 14
*Blue Cross & Blue Shield of Massachusetts, Inc. v. Regeneron Pharms., Inc.*,
  No. 21-cv-12094, 2022 WL 4486067 (D. Mass. Sept. 27, 2022) ........................................... 8
*BMA LLC v. HDR Glob. Trading Ltd.*,
  No. 20-cv-03345, 2021 WL 4061698 (N.D. Cal. Sept. 7, 2021) .......................................... 14
*Boateng v. Gen. Dynamics Corp.*,
  460 F. Supp. 2d 270 (D. Mass. 2006) ...................................................................... 16
*Bowen v. Elane's New Hampshire Holdings, LLC*,
  166 F. Supp. 3d 104 (D. Mass. 2015) ...................................................................... 16
*Burns v. Gerber Prods. Co.*,
  No. CV-12-5027-EFS, 2012 WL 8251405 (E.D. Wash. Sept. 4, 2012) ....................................... 6
*Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*,
  713 F.3d 71 (11th Cir. 2013) .............................................................................. 5
*Cruz-Acevedo v. Unilever United States, Inc.*,
  No. 15-2175 (ADC), 2016 WL 9460633 (D.P.R. Sept. 26, 2016) ............................................ 7
*EMC Corp. v. Parallel Iron, LLC*,
  914 F. Supp. 2d 125 (D. Mass. 2012) ...................................................................... 5
*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
  522 F.3d 271 (2d Cir. 2008) ............................................................................... 5
*Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*,
  No. 12-cv-10551-NMG, 2012 WL 12941889 (D. Mass. Sept. 28, 2012) ..................................... 14
*First State Ins. Co. v. XTRA Corp.*,
  583 F. Supp. 3d 313 (D. Mass. 2022) ..................................................................... 11
*First State Insurance Co. v. XTRA Corp.*,
  No. 21-cv-11855, 2022 WL 344445 (D. Mass. 2022) ........................................................ 11
*Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*,
  249 F. Supp. 2d 12 (D. Mass. 2002) .................................................................. 12, 15
*Jimenez v. Kohl's Dep't Stores, Inc.*,
  480 F. Supp. 3d 305 (D. Mass. 2020) ................................................................. 5, 14
*Kelly v. Gerber Prod. Co.*,
  No. 21-60602-CIV, 2021 WL 2410158 (S.D. Fla. June 11, 2021) ........................................... 7
*Kleinerman v. Luxtron Corp.*,
  107 F. Supp. 2d 122 (D. Mass. 2000) ...................................................................... 9

*Letbetter v. Loc. 514, Transp. Workers Union of Am.*,
    No. 14-CV-00125-TCK-FHM, 2014 WL 4403521 (N.D. Okla. Sept. 5, 2014)........................ 7
*Lloyd v. J.P. Morgan Chase & Co.*,
    No. 11-cv-9305, 2012 WL 3339045 (S.D.N.Y. Aug. 14, 2012)................................................ 6
*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    No. 10-cv-0302, 2011 WL 4389689 (C.D. Cal. May 5, 2011)................................................ 13
*Mercier v. Sheraton Int'l, Inc.*,
    935 F.2d 419 (1st Cir. 1991)................................................................................................ 15
*Norrid v. D.A.R.P., Inc.*,
    No. 17-CIV-401-RAW, 2018 WL 2977384 (E.D. Okla. June 13, 2018) .................................. 8
*Princess House, Inc. v. Lindsey*,
    136 F.R.D. 16 (D. Mass. 1991)............................................................................................. 16
*Rojas-Lozano v. Google, Inc.*,
    No. 15-cv-10160, 2015 WL 4779245 (D. Mass. Aug. 12, 2015) ........................................... 15
*Rothschild v. Gen. Motors, LLC*,
    No. 19-cv-05240, 2020 WL 13581659 (E.D.N.Y., Sept. 30, 2020) ........................................ 6
*Schawbel Techs. LLC v. Heat Factory USA, Inc.*,
    No. 18-cv-10227-LTS, 2018 WL 4440545 (D. Mass. Sept. 17, 2018) .............................. 6, 14
*Shimon v. Equifax Info. Servs. LLC*,
    No. 18-CV-2959 (BMC), 2018 WL 4906245 (E.D.N.Y. Oct. 9, 2018) ................................... 6
*Sigros v. Walt Disney World Co.*,
    129 F. Supp. 2d 56 (D. Mass. 2001) ..................................................................................... 16
*Systemation, Inc. v. Engel Indus.*,
    992 F. Supp. 58 (D. Mass. 1997) .......................................................................................... 15
*Thakkar v. United States*,
    389 F. Supp. 3d 160 (D. Mass. 2019) ..................................................................................... 7
*TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*,
    91 F.3d 1 (1st Cir. 1996)..................................................................................................... 7, 8
*Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.*,
    402 F. Supp. 2d 343 (D. Mass. 2005) ..................................................................................... 9
*Travis v. Navient Corp.*,
    284 F. Supp. 3d 335 (E.D.N.Y. 2018) ..................................................................................... 6
*Veryfine Prods., Inc. v. Phlo Corp.*,
    124 F. Supp. 2d 16 (D. Mass. 2000) ....................................................................... 11, 12, 16
*Waithaka v. Amazon.com, Inc.*,
    404 F. Supp. 3d 335 (D. Mass. 2019) ..................................................................................... 5

## Statutes

28 U.S.C. § 1404(a) ......................................................................................................................... 14

## Other Authorities

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
    Federal Practice & Procedure § 3851 .................................................................................... 16

## I.   INTRODUCTION

For a year and a half, this Court has overseen claims brought by the U.S. Department of Justice ("DOJ") and several states' attorneys general that American Airlines Group Inc. ("American") and JetBlue Airways Corporation's ("JetBlue") so-called "Northeast Alliance" was a naked market allocation in violation of the federal antitrust laws. The Court has already addressed the sufficiency of the DOJ's allegations, resolved discovery disputes, and efficiently shepherded a complex antitrust case through trial.[1]

JetBlue and American are now trying to run away from this Court's expertise and prior rulings in favor of a do-over in JetBlue's hometown. Ms. Buehler has validly selected Massachusetts as a forum. But before she filed her complaint—and before any private party had the opportunity to assess the trial evidence—two other plaintiffs rushed to file complaints in the Eastern District of New York ("EDNY") representing a smaller class of plaintiffs, advancing a narrower set of claims, and relying principally on quotations of the DOJ's allegations. Defendants have glommed onto those complaints, claiming that Ms. Buehler's case—her thorough and detailed claims on behalf of a class comprised of all, not just some, of the travelers harmed by JetBlue and American's anticompetitive agreement—must be subordinated to those other cases.

Make no mistake: JetBlue and American's motion reflects a commitment to neither efficiency nor conservation of judicial resources. If Defendants sought efficiency, they would have moved to transfer the EDNY cases to this Court. Instead, their maneuvers suggest an attempt to forum shop for a court unfamiliar with their misconduct, and a preference to face a thinner

---

[1] *United States v. American Airlines Group Inc., et al.*, 21-cv-11558-LTS (D. Mass.) ("DOJ Action"), ECF Nos. 76, 83, 90, 96, 99, 102, 103, 182, 220, 221, 281.

complaint. This is not a valid basis to remove a case from this Court. Defendants' motion should be denied.

## II.  RELEVANT BACKGROUND

Ms. Buehler alleges that JetBlue and American entered into the "Northeast Alliance"—a set of agreements to stop competing for customers on flights to, from, or through JFK, LaGuardia, Newark, and Boston Logan—to lessen customer choice and raise prices.[2] Defendants have bragged publicly about their newly acquired market power.[3]

Because the Northeast Alliance restricted capacity and raised prices,[4] it prompted regulatory scrutiny. In September 2021, the DOJ sued American and JetBlue in this Court for violation of § 1 of the Sherman Antitrust Act (15 U.S.C. § 1) "to prevent the harm to consumers that will occur once the Northeast Alliance is fully implemented[.]"[5] That case proceeded to a bench trial in Fall 2022.[6]

### A.  Ms. Buehler has filed a detailed complaint on behalf of a putative class comprised of all parties injured by Defendants' misconduct, and advanced causes of action that encompass the full scope of Defendants' alleged wrongdoing.

While the DOJ's complaint has been on file for eighteen months, it contains only allegations; substantive materials like exhibits were maintained—and remain—under seal.[7] The public got its first glimpse of the evidence supporting claims that the Northeast Alliance violated federal antitrust laws when this Court released the bench-trial transcripts on January 30, 2023.[8]

---

[2] Class Action Compl. & Demand for Jury Trial, Feb. 2, 2023, ECF No. 1 ("*Buehler* Compl.") at ¶¶ 79-101.

[3] *Id.* ¶¶ 104-106.

[4] *Id.* ¶¶ 107, 131-142, 154-171.

[5] Compl., *United States v. American Airlines Group Inc.*, No. 21-cv-11558-LTS (D. Mass. Sept. 21, 2021) ("DOJ Action"), ECF No. 1 at ¶ 13.

[6] DOJ Action, ECF Nos. 297-315.

[7] DOJ Action, ECF Nos. 70, 89, 148-49, 163-66, 222, 236, 249, 252, 286, 290, 292-94, 318, 321, 331.

[8] DOJ Action, ECF Nos. 297-315.

Rather than race to Court with second-hand allegations recounting the DOJ's *allegations* (instead of its *proof* at trial), Ms. Buehler waited for the DOJ trial transcripts.

Once this Court released the trial transcript in the DOJ Action, Ms. Buehler promptly confirmed the soundness of her claims and filed her class-action complaint three days later, on February 2, 2023, and properly marked her complaint as related to the DOJ action.[9] Ms. Buehler thoroughly described Defendants' wrongdoing, based on testimony of fact witnesses at the DOJ trial, public statements of Defendants, and other available information.

She also alleged facts demonstrating injury not just to individuals and entities that purchased directly from JetBlue and American, but *all* passengers traveling to, from, or through the four Northeast airports were injured by Defendants' alleged wrongdoing.[10] And she asserted causes of action that covered the full scope of Defendants' alleged wrongdoing—not just the § 1 claim on which the DOJ sought injunctive relief, but also a conspiracy claim under Sherman Antitrust Act § 2, and attempted monopolization claims against each defendant.[11] Defendants concede all of this.[12]

---

[9] Civil Cover Sheet, Ex. 1 to *Buehler* Compl., ECF No. 1-1, at Section VIII and Category Form, Ex. 2 to *Buehler* Compl., ECF No. 1-2, at ¶ 3.

[10] *Compare, e.g., Buehler* Compl. ¶ 255 (defining class as "[a]ll persons or entities . . . who purchased airfare for travel departing from, connecting through, or arriving at" the relevant airports "directly from American Airlines Group, Inc.; JetBlue Airways Corp.; *any other legacy carrier; [or] any other low-cost carriers*").

[11] *Compare Buehler* Compl. ¶¶ 270–316.

[12] *See* Mem. in Supp. of American and JetBlue's Mot. to Dismiss or Transfer Under the First-to-File Rule or 28 U.S.C. § 1404(A), Mar. 16, 2023, ECF No. 23 ("Def. Mem.") at 5. (Ms. Buehler's "factual allegations relating to the NEA . . . [were] taken from the publicly-available trial record in the DOJ Action"); *id.* ("Plaintiff's proposed class includes consumers who allegedly purchased tickets not only from American and JetBlue but also from Defendants' competitors (e.g., Delta, United)); Reply to Response to Letter Mot. to Stay, *In re American Airlines/JetBlue Antitrust Litig.*, No. 1:22-cv-07374 ("Consolidated Action") (E.D.N.Y. Feb. 21, 2023), ECF No. 36 (Ms. Buehler's "Section 2 claims . . . implicate a distinct body of antitrust law").

**B. Defendants urge this Court to subjugate Ms. Buehler's complaint to a narrower one.**

Meanwhile, other plaintiffs chose a different tactic: in December 2022, another plaintiff filed a putative class action in the EDNY.[13] Two days later, yet another plaintiff filed an almost verbatim copy of that complaint, also in the EDNY.[14] These EDNY cases sought to represent a class of only those who purchased qualifying airfare directly from Defendants;[15] and advanced only a single cause of action: the same § 1 of the Sherman Antitrust Act (15 U.S.C. § 1) claim asserted by the DOJ.[16]

Little has happened in the EDNY case in the nearly four months since it was filed beyond consolidation and plaintiffs' counsel's motion to appoint themselves interim co-lead counsel.[17] Although the EDNY plaintiffs filed a consolidated amended complaint on February 3—*after* the DOJ trial transcripts became available and *after* Ms. Buehler filed her complaint—the consolidated complaint continued to rely heavily on what the DOJ said, not what Defendants did.[18] It continued to allege a narrower class definition.[19] And it continued to advance only a § 1 of the Sherman Antitrust Act (15 U.S.C. § 1) claim.[20]

---

[13] *See* Class Action Compl., *Berger v. JetBlue Airways Corp.*, No. 1:22-cv-7374 (E.D.N.Y. Dec. 5, 2022), ECF No. 1 ("*Berger* Compl.") at ¶ 10.

[14] *See* Compl., *Guerin v. JetBlue Airways Corp.*, No. 22-cv-7423 (E.D.N.Y., filed Dec. 7, 2022), ECF No 1 ("*Guerin* Compl.") at ¶ 11.

[15] *Berger* Compl. ¶ 73 (defining class as "[a]ll direct purchasers of airline tickets going to or from" the relevant airports "*from Defendants*" (emphasis added)) *and Guerin* Compl. ¶ 73 (same).

[16] *Berger* Compl. ¶¶ 80–86 (asserting only a § 1 of the Sherman Antitrust Act (15 U.S.C. § 1) claim) *and Guerin* Compl. ¶¶ 80–86 (same).

[17] *Berger v. JetBlue Airways Corp.*, No. 1:22-cv-7374 (E.D.N.Y) ("*Berger* Action"), ECF Nos. 22, 25.  The co-lead counsel motion was granted on January 10, 2023, *before* there were *any* other counsel involved, and *before* any other complaints were filed. It is unclear what counsel sought to lead.

[18] *See, e.g.*, Consol. Am. Class Action Compl. for Violations of the Sherman Antitrust Act,, *In re American Airlines/JetBlue Antitrust Litigation*, 22-cv-07374 (E.D.N.Y. Feb. 3, 2023), ECF No. 33 ("EDNY Amended Compl.") at ¶¶ 2–6, 12–13, 24, 43, 52-53, 56, 59, 61, 71, 76

[19] *Id.* ¶ 84.

[20] *Id.* ¶¶ 91–97.

## III. ARGUMENT

### A. The first-to-file rule is discretionary and does not support—much less mandate—that this Court forfeit a case it is already familiar with in favor of a narrower case in another district.

The "first-to-file" rule is meant to "promote judicial efficiency and to avoid duplicative litigation" across district courts.[21] But it is by no means a mandate to be "applied in a mechanical way."[22] Rather, "courts should assess the appropriateness of the first-filed rule on a case-by-case basis, without reference to rigid requirements[.]"[23] Indeed, "[e]xceptions to the rule are not rare, and a district court has discretion to give preference to a later-filed action when that action will better serve the interests involved,"[24] including those "to promote efficiency[.]"[25]

Courts weighing a request to remove a case from a plaintiffs' chosen forum consider, among other things: "(1) which action was filed first; (2) the similarity of the parties; and (3) the similarity of the issues."[26] Here, only the first factor weighs in favor of Defendants' bid to remove this action from this Court—the Court already intimately familiar with the facts, legal issues, and likely disputes.

---

[21] *EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 127 (D. Mass. 2012).

[22] *Jimenez v. Kohl's Dep't Stores, Inc.*, 480 F. Supp. 3d 305 (D. Mass. 2020); *see also Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (first-filed doctrine is not an "invariable mandate"); *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 79 (11th Cir. 2013) ("[a] first-filed analysis looks to the character of the suits and the parties to the suits, not simply to the similarity of issues without regard to the identity of the parties asserting them and their asserted rights as presented in the initial lawsuit.").

[23] *Jimenez*, 480 F. Supp. 3d at 305 (citation and internal quotation marks omitted).

[24] *EMC Corp.*, 914 F. Supp. 2d at 127 (citation omitted).

[25] *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 350 (D. Mass. 2019), *aff'd*, 966 F.3d 10 (1st Cir. 2020).

[26] *Jimenez*, 480 F. Supp. 3d at 306.

1. **Transfer of a class-action complaint is inappropriate where, as here, the complaint contains significantly broader allegations and theories of liability and seeks to vindicate the rights of a broader class compared to the competing complaint.**

The first-to-file rule generally applies where "*identical* actions are proceeding concurrently in two federal courts."[27]  For example, transfer may be warranted if (i) a second-filed complaint is a true "copycat" of the first;[28] (ii) the proposed class in the second-filed complaint is completely subsumed within the class definition in the first;[29] or (iii) if the causes of action in the second-filed complaint are duplicative of (or a mere subset of) those in the first.[30]  None is the case here.

Ms. Buehler's complaint is not a mere copycat of the EDNY Amended Complaint To the contrary, as Defendants themselves have acknowledged, her complaint is "double the length" of the EDNY Amended Complaint,[31] and, unlike the EDNY Amended Complaint, contains "factual allegations . . . taken from the publicly-available trial record in the DOJ Action."[32]

---

[27] *Schawbel Techs. LLC v. Heat Factory USA, Inc.,* No. 18-cv-10227-LTS, 2018 WL 4440545, at *1 (D. Mass. Sept. 17, 2018) (Sorokin, J.) (emphasis added); *Shimon v. Equifax Info. Servs. LLC,* No. 18-CV-2959 (BMC), 2018 WL 4906245, at *2 (E.D.N.Y. Oct. 9, 2018), *aff'd,* 994 F.3d 88 (2d Cir. 2021). Given that class actions often differ in scope, some courts have expressed "skeptic[ism] that the first-filed rule is generally appropriate" in the class-action context.  *See, e.g., Rothschild v. Gen. Motors, LLC,* No. 19-cv-05240, 2020 WL 13581659, at *8 (E.D.N.Y., Sept. 30, 2020).

[28] *Cf. Travis v. Navient Corp.,* 284 F. Supp. 3d 335, 348 (E.D.N.Y. 2018) (refusing to transfer a non-copycat class-action complaint to the district where an earlier complaint was pending).

[29] *See Lloyd v. J.P. Morgan Chase & Co.,* No. 11-cv-9305, 2012 WL 3339045, at *1 (S.D.N.Y. Aug. 14, 2012) (finding transfer under the first-filed rule unwarranted "because the . . . class definition in the [first-filed] action d[id] not subsume, and their resolution would not be conclusive of, those asserted in the instant action"); *Travis,* 284 F. Supp. 3d at 348–49 (declining to apply the first-to-file rule where class is broader in second-filed class action); *Shimon,* 2018 WL 4906245, at *3 (noting putative class action was a "particularly poor candidate" for application of first-to-file rule where class definitions "do not entirely overlap"); *Lloyd,* 2012 WL 3339045, at *1 (finding transfer under the first-to-file rule unwarranted where class definition in first-filed action did not subsume second-filed class "and their resolution would not be conclusive of, those asserted in the instant action"); *Burns v. Gerber Prods. Co.,* No. CV-12-5027-EFS, 2012 WL 8251405, at *2–3 (E.D. Wash. Sept. 4, 2012) (denying motion to dismiss under first-filed rule where "proposed class definitions … are different").

[30] *Cf. id.*

[31] Consolidated Action, ECF No. 36.

[32] Def. Mem. at 5.

The proposed class in Ms. Buehler's complaint is not subsumed within the EDNY Amended Complaint's proposed class. To the contrary, as Defendants have conceded, the *Buehler* Complaint also asserts claims on behalf of a much larger putative class (all ticket purchasers from all airlines, not just from JetBlue and American).[33]

And Ms. Buehler does not advance just a subset of the causes of action in the EDNY case. Again, the opposite is true: as Defendants concede, "[t]he additional Section 2 claims . . . implicate a distinct body of antitrust law."[34] The EDNY Amended Complaint raises only one cause of action, copied from the DOJ's complaint.[35]

Defendants ignore this Circuit's clear requirement that overlap be "nearly complete" to presumptively invoke the first-to-file rule.[36]  Instead, they argue in favor of a lesser standard that the two actions need only be "sufficiently similar." In doing so, they not only rely on inapposite authority,[37] they miss the mark entirely. Applying the first-to-file rule where overlap is "less than complete" is only appropriate on a "case by case" basis, taking into consideration "such factors as

---

[33] *Id.*; *see also Buehler* Compl. ¶ 255.

[34] Consolidated Action, ECF No. 36.

[35] *Compare* DOJ Compl. ¶¶ 81–86 (alleging one count, violation of 15 U.S.C. § 1 against all defendants) *with* EDNY Amended Compl. ¶¶ 91–97 (same). Because the DOJ sought only injunctive relief, and not to remedy the harm from the agreement to consumers, that single cause of action was sufficient for its case.

[36] *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)

[37] *See Thakkar v. United States*, 389 F. Supp. 3d 160, 173 (D. Mass. 2019) (applying first-to-file rule where a second-filed *individual action* was encompassed by a first-filed class action); *Letbetter v. Loc. 514, Transp. Workers Union of Am.*, No. 14-CV-00125-TCK-FHM, 2014 WL 4403521, at *6 (N.D. Okla. Sept. 5, 2014) (applying first-to-file rule where the second-filed class action encompassed "merely a narrower subset" of plaintiffs in the first-filed class action); *Cruz-Acevedo v. Unilever United States, Inc.*, No. 15-2175 (ADC), 2016 WL 9460633, at *4 (D.P.R. Sept. 26, 2016) (no mention of the first-to-file rule; instead transferring under 28 U.S.C. § 1404(a) based in large part on the plaintiff's failure to oppose transfer, which amounted to "a tacit consent to … transfer"); *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010) (*declining* to apply first-to-file rule where, as here, certification of first-filed class action would leave out members of additional theories of liability in the second-filed class action); *Kelly v. Gerber Prod. Co.*, No. 21-60602-CIV, 2021 WL 2410158, at *2 (S.D. Fla. June 11, 2021) (applying first-to-file rule where later-filed action on behalf of a class of Florida consumers was subsumed by first-filed nationwide class action).

the extent of overlap, the likelihood of conflict, *the comparative advantage and the interest of each forum in resolving the dispute*."[38]

Thus, Defendants' citation to a single out-of-circuit decision applying the first-to-file rule to a later-filed class action that was broader than the first[39] is wholly unavailing. They cannot seriously dispute the overwhelming comparative advantage and interest of having this action adjudicated in this Court, which, for a year and a half, has presided over the related DOJ Action that forms the basis for *both* this action and the EDNY case. Indeed, Defendants have previously conceded that both actions are "follow-on" private lawsuits to the DOJ Action.[40] And they fail to cite *any* authority transferring a follow-on class action *away* from a related government enforcement action.[41]

In short, subjugating Ms. Buehler's claims to those in the EDNY action, as Defendants ask this Court to do, would allow Defendants to trim the claims and allegations against them and the class of individuals to whom they may be liable.[42] Whatever the applicability of the first-filed doctrine to class actions, it is decidedly directed to *prevent* gamesmanship and forum shopping, not encourage it. Nor is it intended to secure a substantive victory for a defendant based on a calendrical technicality. The differences between Ms. Buehler's complaint and the EDNY Amended Complaint alone merit denial of the motion to transfer.

---

[38] *TPM*, 91 F.3d at 4 (emphasis added).

[39] *Norrid v. D.A.R.P., Inc.*, No. 17-CIV-401-RAW, 2018 WL 2977384, at *2 (E.D. Okla. June 13, 2018).

[40] Consolidated Action, ECF No. 34 at n.2.

[41] In fact, at least one court in this district has refused to transfer an action to another district where earlier filed cases were pending in light of a government enforcement action pending here. *See Blue Cross & Blue Shield of Massachusetts, Inc. v. Regeneron Pharms., Inc.*, No. 21-cv-12094, 2022 WL 4486067 (D. Mass. Sept. 27, 2022).

[42] Defendants' suggestion that the filing of *Kupferberg, et al. v. JetBlue Airways Corp.*, et al., 1:23-cv-01220-ENV-VMS (E.D.N.Y. Feb. 15, 2023) (*"Kupferberg"*) mitigates against the concern of Ms. Buehler losing her Section 2 of the Sherman Antitrust Act claim should be disregarded out of hand. The notion that a later-filed action copycatting Ms. Buehler's claims weighs in favor of transfer turns the first-to-file rule on its head. Moreover, *Kupferberg*, like the EDNY case, contains significantly thinner allegations than Ms. Buehler's complaint. *See Kupferberg*, ECF No. 1.

### 2.  Special circumstances require keeping this action before this Court.

Even if this Court were to apply the first-to-file rule here (it should not), this Court *still* should not transfer Ms. Buehler's case away from this district and this Court, because special circumstances warrant the case remaining here.

> **i.   The balance of convenience substantially favors keeping the litigation here, where the parties will benefit from this Court's hard work in the related DOJ Action.**

An exception to the first-to-file rule applies where "the balance of convenience substantially favors the second-filed action."[43] That is the case here.

Ms. Buehler did not choose this district at random: she filed her complaint here because, in addition to residing in this this district, this Court has been adjudicating the related DOJ Action for a year and a half. Indeed, Defendants concede that this Court is "well-versed on the facts relating to the formation and implementation of the NEA."[44]

This Court has already ruled on the sufficiency of factual allegations similar to Ms. Buehler's.[45] It has established ground rules facilitating discovery and confidentiality issues.[46] It has ruled on discovery disputes.[47] It is familiar with the circumstances under which one or more of Defendants have arguably waived privilege in defense of their actions.[48] And it is intimately

---

[43] *See, e.g.*, *Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343, 347 (D. Mass. 2005); *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 124 (D. Mass. 2000) (noting "[i]n some cases, a showing of a balance of convenience in favor of the second action or special circumstances giving priority to the second action is warranted.").

[44] Def. Mem. at 2.

[45] *See* Order on Mot. to Dismiss, DOJ Action, ECF No. 103.

[46] *See, e.g.*, Order Governing Expert Witnesses Disclosures and Depositions, DOJ Action, ECF No. 83, Order Governing Fact Depositions, DOJ Action, ECF No. 96, Stipulated Protective Order, DOJ Action, ECF No. 99, Order Governing Discovery of Electronically Stored Information, DOJ Action, ECF No. 102.

[47] *See, e.g.*, Order, DOJ Action, ECF No. 90 (Electronic Order largely denying discovery disputes raised by Defendants); Order, DOJ Action, ECF No. 182 (Order on Mot. Compel Witnesses to Trial), Order on Pls.' Mot. to Compel (Doc No. 265), DOJ Action, ECF No. 281.

[48] Order on Pls.' Mot. to Compel (Doc No. 265), DOJ Action, ECF No. 281.

familiar with the details of defendants' conduct, the complex and obfuscating structure of the Northeast Alliance agreements, and how that conduct and those contracts measure up against the antitrust laws.[49] Yet Defendants want to make a second court familiarize itself with the facts, adjudicate the sufficiency of claims, establish procedural orders like ESI protocols and protective orders, and navigate discovery disputes—all tasks this Court has already ably handled.

Proceeding before a Court with this level of familiarity and experience with the specific facts and issues of this case would deliver substantial time and cost-savings to all parties. By contrast, were this Court to send Ms. Buehler's case to New York, a different district court would have to relearn the case; the parties would have to relitigate threshold issues like the protective order, ESI protocol, and other matters, and Defendants could (and probably would) force the parties to start all over on discovery negotiations.[50] Not only is it far more convenient for the parties to remain in Massachusetts and reap the benefits of work already done here, it is a better use of judicial resources: JetBlue and American's transfer request betray a lack of respect for the hard work this Court has already done, and the burden that relitigating every aspect of the case would place on the court in the EDNY.

Defendants' motion fails to recognize this convenience factor. Indeed, the only "convenience" they discuss is the convenience to their own witnesses.[51] Because JetBlue is headquartered in New York and American has a hub in New York, Defendants take the remarkable position that New York is the only rational choice.[52]

---

[49] DOJ Action, ECF Nos. 297-315.

[50] This Court has already presided over, and Defendants have already compiled, discovery relevant to the legality of their conduct. While additional discovery may be needed to address specifically the harm caused to purchasers by their conduct and the additional elements of Ms. Buehler's § 2 claims, that is no reason to throw the baby out with the bathwater: it is still far more efficient to proceed here than to start anew in the EDNY.

[51] Defs.' Mem. at 1, 12–14.

[52] *See id.*

First, "it is not a hardship to travel from New York to Boston in order to appear for a civil trial."[53] This especially true where a party is a "commercial entit[y] equally capable of litigating" in either forum.[54] Both JetBlue and American have already done just that: they brought 14 of their employees to testify in the DOJ Action. Second, *Defendants are airlines*, engaged in the actual business of moving people around the country;[55] they can fly witnesses and lawyers to Boston, just as they did in the DOJ Action.

JetBlue and American assume that, absent a transfer, adjudication of the interests embodied in Ms. Buehler's case and the EDNY action would be an inefficient mess.[56] But they overlook an obvious alternative: move to transfer the EDNY actions here. *That* is the option that best serves the interests of efficiency: all parties operating collaboratively in one action in front of the Court best equipped to oversee this case efficiently.[57]

Finally, it is not, as Defendants insinuate,[58] a foregone conclusion that the EDNY will plow ahead and both actions will proceed in separate courts if Court does not transfer Ms. Buehler's case. As the EDNY stated in boldface in its scheduling order, "**In the event that the Buehler case is not going to be transferred to this district, the parties are directed to advise the Court as soon as practicable.**"[59] Any suggestion in the scheduling order that the EDNY is ready to forge

---

[53] *Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 26 (D. Mass. 2000).

[54] *First State Ins. Co. v. XTRA Corp.*, 583 F. Supp. 3d 313, 319 (D. Mass. 2022).

[55] *Buehler* Compl. ¶¶ 18–19.

[56] Defs.' Mem. at 12 (wringing hands over the possibility of "multiple motions to dismiss" and "litigating nearly identical cases in parallel").

[57] *See, e.g.*, *First State Insurance Co. v. XTRA Corp.*, No. 21-cv-11855, 2022 WL 344445, at *5 (D. Mass. 2022) (transferring action to court overseeing underlying government enforcement actions because the relationship to the "underlying litigation" was "more significant" than other considerations). Ms. Buehler does not suggest that this Court should order the EDNY actions moved to this Court. She raises this alternative only to show that denying Defendants' forum-shopping motion would not bring about the parade of horribles of which they complain.

[58] Defs.' Mem. at 6.

[59] Order, Consolidated Action, Mar. 6, 2023.

ahead is a product of Defendants' representations to that court.[60] In meet-and-confers, Ms. Buehler twice declined Defendants' request to stipulate to transfer this case.[61] But when Defendants described the meet-and-confer to the EDNY, they represented that the parties here "are currently in discussions . . . regarding *the request* for a transfer," and that transfer could occur "either by order *or stipulation*."[62] The scheduling order, therefore, is a reflection of Defendants' (mis)representation of transfer as a foregone conclusion.[63]

### ii. The first-to-file rule should not reward a plaintiff that races to court.

A second exception to the first-to-file rule "which nullifies the presumption in favor of the first-filed action is the filing of a suit for the sole purpose of winning the race to the courthouse to secure a preferred forum."[64] In other words, the first-to-file rule should not reward a party that cuts corners in order to rush to court, throw their hands in the air, and proclaim "FIRST!"[65]

To be sure, this case does not present a traditional "race to the courthouse" often seen in the patent context where one party jumps the gun by filing a declaratory judgment action in its preferred forum before the party that has damages files.[66] But the exception should apply with equal force where, as here, one group of plaintiffs rushes to the courthouse and files a complaint

---

[60] *Id.* (entering proposed schedule "[i]n light of these representations").

[61] Ms. Buehler memorialized this in a March 1, 2023 letter: "It remains our belief that this matter belongs in the District of Massachusetts, where the Court is presiding over a related case that has been pending for more than a year."

[62] Letter Regarding Parties' Proposed Schedule, Consolidated Action, ECF No. 37 (emphasis added).

[63] *See id.* ("Within 21 days after Buehler is transferred to this Court—either by order or stipulation. . . ."). Of course, Defendants' first ask here is for outright dismissal, not transfer, so they can face only the EDNY case.

[64] *Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 16 (D. Mass. 2002).

[65] *See, e.g.*, Notice of Pls.' Mot. and Mot. to Consolidate Related Actions and for Appointment of Interim Co-Lead Class Counsel, *Berger* Action, ECF No. 22 at 1 (noting there were then only "two" cases filed against American and JetBlue).

[66] *See, e.g.*, *Veryfine*, 124 F. Supp. 2d at 22.

that, if allowed to control the litigation, may not protect (and may well prejudice) the rights of later filing plaintiffs that took the time to uncover evidence in support of their claims.

The chronology of the filings should not be analyzed in a vacuum: it should be assessed within the context of the related DOJ Action. Up to the point when the trial transcripts were released to the public in late January 2023, the facts (i.e., beyond the allegations in the complaint) that would support a private antitrust case were kept largely under wraps.[67]

Filing a consumer complaint before having the opportunity to assess the evidence in the DOJ Action would require relying on the DOJ's pleadings without an independent good faith basis.[68] Ms. Buehler therefore did not base her allegations solely on the allegations of another party,[69] but on the facts adduced at trial, as reflected in the trial transcripts that were released to the public. Once those transcripts—which provided sufficient primary information from which a party could in good faith plead the facts of this case, were released, Ms. Buehler acted quickly to digest that information, test the soundness of her claims, prepare a factually sound complaint, and file her claims.[70]

Forcing Ms. Buehler to proceed under the allegations in the EDNY Amended Complaint may well prejudice both her and the class of purchasers whose injuries she has volunteered to steward through the federal courts. Many of the allegations in the EDNY case are *not* factual

---

[67] *See supra*, n. 7.

[68] *See, e.g.*, *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-0302, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011).

[69] *Contra* EDNY Amended Compl. ¶¶ 3 ("According to the DOJ," and block quoting extensively from DOJ compl.), 4 (same), 5 (writing "[t]he DOJ and the Plaintiff States continue . . ." and block quoting further language from the DOJ compl.), 6 (alleging that the DOJ concludes a fact, without alleging the conclusion itself), 24 (alleging JetBlue flight volumes "[a]ccording to the DOJ" instead of verifying the statistics from a primary source), 43 (alleging the formation of the Alliance "upon information and belief," rather than upon primary evidence of when the alliance was formed), 52 ("The DOJ Complaint states . . ." and then quoting the DOJ compl.), 53 (same).

[70] *Contra Berger* Compl. (filed four days after DOJ submitted its Proposed Findings of Fact and Post-Trial Brief and 56 days before the transcripts were available); *Guerin* Compl. (filed six days after DOJ's filings and 56 days before trial transcript release).

allegations, but rather allegations of what the DOJ alleged—even though the EDNY plaintiffs filed their Amended Complaint *after* the trial transcripts were released (and *after* Ms. Buehler filed hers).[71] The EDNY court may well conclude that those allegations do not establish any facts, beyond the fact that the DOJ alleged something.[72] This is a case, therefore, in which a race to the courthouse may well prejudice the party that thinks it won the race.

*** 

The first-to-file rule is meant to prevent "potential gamesmanship" and manipulation by parties at the early stage of litigation.[73] An application of the first-to-file rule in this instance would *reward* gamesmanship, and, in the process, allow Defendants to forum shop the jurisdiction where they can get a second bite at the apple.[74] The motion should be denied.[75]

### B. Defendants' alternative transfer argument should also be rejected because the balance of convenience substantially favors keeping Ms. Buehler's action before this Court.

Defendants also ask this Court to transfer Ms. Buehler's action under §1404(a), the "codification of the doctrine of forum non conveniens."[76] But transfer is appropriate only "[f]or the convenience of parties and witnesses" or "in the interest of justice."[77]

---

[71] *See supra* note 19.

[72] *Cf. Amorosa v. Gen. Elec. Co.*, No. 21-cv-3137, 2022 WL 3577838, at *3 (S.D.N.Y. Aug. 19, 2022) ("[d]isregarding" allegations copied from another complaint and "direct quotations" from an agency filing, because such allegations "cannot ordinarily form the basis of a" complaint); *BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-cv-03345, 2021 WL 4061698, at *1 (N.D. Cal. Sept. 7, 2021) (refusing to credit allegations that were "largely cop[ied] and paste[d] from a complaint in" another action).

[73] *See Schawbel*, 2018 WL 4440545, at *1 (citing *Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*, No. 12-cv-10551-NMG, 2012 WL 12941889, at *10 (D. Mass. Sept. 28, 2012).

[74] *See Jimenez*, 480 F. Supp. 3d 305 (warning against allowing defendants to forum shop in class action cases).

[75] It goes without saying that, if the case should not be transferred, it should not be dismissed either. Defendants rely solely on the discretionary powers within the first-to-file rule, yet suggest no deficiency with Ms. Buehler's pleadings and offer no basis to dismiss. If the Court believes Ms. Buehler's complaint should bend to the EDNY Amended Compl., Ms. Buehler respectfully requests that the Court transfer the case, rather than dismiss it.

[76] *Albion v. YMCA Camp Letts*, 171 F.3d 1, 2 (1st Cir. 1999).

[77] 28 U.S.C. § 1404(a).

A defendant seeking transfer bears a heavy burden.[78] "The plaintiff's forum choice 'should rarely be disturbed,'" and therefore "'the moving defendant . . . must establish that the private and public interests weigh heavily on the side of trial in the foreign forum.'"[79] And "[t]he defendants have the burden to establish that, on balance, the interests of justice and convenience weigh heavily in favor of transfer."[80] To meet that burden, a defendant must "state with particularity, by way of proof or affidavit" why the transfer factors weigh in its favor, including "what witnesses are to be called and what the nature of their testimony and the extent of their inconvenience will be."[81]

As a preliminary matter, Defendants cannot meet their burden in their bid to transfer, because they offer no proof; no affidavit; no particularized statement in favor of transfer. That alone should suffice to reject Defendants' arguments out of hand. But in any event, JetBlue and American fail to meet their burden in other ways.

In determining the most appropriate forum, courts in this district often weigh a number of factors including: "(1) the plaintiff's choice of forum, (2) the relative convenience of the parties, (3) the convenience of the witnesses and location of documents, (4) any connection between the forum and the issues, (5) the law to be applied and (6) the state or public interests at stake."[82] None of these factors favors transfer.

First, the plaintiff's choice of forum and relative convenience of the parties both weigh against transfer. Massachusetts is undoubtedly a more convenient forum for Ms. Buehler, as she

---

[78] See *Rojas-Lozano v. Google, Inc.*, No. 15-cv-10160, 2015 WL 4779245, at *2 n.4 (D. Mass. Aug. 12, 2015).

[79] *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991) (citations and internal quotation marks omitted).

[80] *Systemation, Inc. v. Engel Indus.*, 992 F. Supp. 58, 63 (D. Mass. 1997) (citation and internal quotation marks omitted).

[81] *Rojas-Lozano v. Google, Inc.*, 2015 WL 4779245, at *2, n. 4.

[82] *Holmes*, 249 F. Supp. 2d at 17.

resides in Massachusetts. And it is not inconvenient for Defendants. "[I]t is not a hardship" for JetBlue "to travel from New York to Boston."[83] And while Defendants claim that New York is somehow more convenient a forum for Texas-based American, that claim holds no water. Both American and JetBlue fly direct from Dallas to Boston, making Boston at least as convenient as New York. The fact that both JetBlue and American are litigating the DOJ Action *here* puts the lie to their protestations.[84] Thus, factors (1) and (2) weigh against transfer.

Second, the convenience of the witnesses and the location of documents weigh against transfer. The convenience of witnesses is "probably the most important factor, and the factor most frequently mentioned" in transfer analyses.[85] But the realities of litigation (travel, employee absence, document production) are not a basis for transfer.[86] Instead, courts are concerned with the location of non-party witnesses.[87] Defendants, by contrast, offer only that New York would be more convenient for *their own employees*. That does not suffice to satisfy factor (3).

Third, the "location" of the documents is immaterial: "technological advances have undercut the importance of the physical location of documents, electronic discovery . . . ."[88] Anyway, Defendants have both already produced what may well be the bulk of responsive

---

[83] *Veryfine*, 124 F. Supp. 2d at 26.

[84] JetBlue is also a named defendant in a separate recently filed DOJ action in this District, *United States of America et al v. JetBlue Airways Corp. et al*, 1:23-cv-10511.

[85] *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) (citations omitted).

[86] *See Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 277 (D. Mass. 2006) (denying defendant's motion to transfer, noting "the convenience of the parties does not warrant transfer to North Carolina, as it would merely shift inconvenience from defendants to Boateng, and defendants are best situated to absorb and spread the costs of this litigation").

[87] *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3851 ("[T]he convenience of witnesses who are employees of a party is given less weight by the court because that party can obtain their presence at trial." (citing cases)); *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 71 (D. Mass. 2001) ("If, however, a court order or the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of forum, that factor diminishes in importance.").

[88] *Bowen v. Elane's New Hampshire Holdings, LLC*, 166 F. Supp. 3d 104, 109 (D. Mass. 2015).

documents concerning the liability elements of Ms. Buehler's claims here, in Massachusetts. Reproducing them will be even easier.

Finally, Defendants cannot contest that Massachusetts has a connection to the issues. While the New York airports are impacted by the Northeast Alliance, JetBlue is the largest carrier at Boston Logan.[89] Boston also represents JetBlue's "largest corporate partner base."[90] And the harmful effects of Defendants' alleged misconduct is felt most heavily in Boston.[91] Not only that, this conduct has been litigated here for a year and a half. This case's significant connections to this district therefore weigh in favor of keeping the case before this Court under factor (4).

### IV. CONCLUSION

The Court has discretion to give preference to a later-filed action when that action "will better serve the interests involved,"[92] and should exercise that discretion here. Defendants' motion is a thinly veiled attempt to receive another bite at the apple with a court not yet familiar with the facts of this case. Transferring this case under either the first-to-file rule or § 1404(a) would be inefficient and a waste of judicial resources. The Court should therefore deny Defendants' motion.

Dated: March 30, 2023                    Respectfully submitted,

                                         **BERMAN TABACCO**

                                         */s/ Steven L. Groopman*
                                         Kathleen M. Donovan-Maher (BBO #558947)
                                         Steven L. Groopman (BBO #568933)
                                         Kristie A. LaSalle (BBO #692891)
                                         Christina L. Gregg (BBO #709220)

---

[89] *Buehler* Compl. ¶ 19.

[90] *Id.* ¶ 141.

[91] *Compare id.* ¶¶ 175–76 (quantifying the effect of Defendants' conduct in Boston) *with id.* ¶ 178 (quantifying effect in New York).

[92] *See, e.g., A123 Sys., Inc. v. Hydro-Quebec*, 657 F. Supp. 2d 276, 280 (D. Mass. 2009) (holding first-filed action yielded to later-filed action where the first-filed action would be subject to imminent dismissal).

One Liberty Square
Boston, Massachusetts 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
kdonovanmaher@bermantabacco.com
sgroopman@bermantabacco.com
klasalle@bermantabacco.com
cgregg@bermantabacco.com

Todd A. Seaver (BBO #645874)
Matthew D. Pearson (*pro hac vice forthcoming*)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
tseaver@bermandetabacco.com
mpearson@bermantabacco.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF System will be sent electronically

to the registered participants as identified on the Notice of Electronic Filing.

Dated: March 30, 2023                    */s/ Steven L. Groopman*
                                          Steven L. Groopman