UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DIANNE BUEHLER, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil No. 23-10281-LTS |
| JETBLUE AIRWAYS CORPORATION & AMERICAN AIRLINES GROUP, INC., | ) ) ) ) |
| Defendants. | ) ) |

ORDER ON MOTION TO DISMISS OR TRANSFER (DOC. NO. 22)

May 24, 2023

SOROKIN, J.

This putative class action alleges harm to customers arising from the Northeast Alliance ("NEA"), a joint venture between JetBlue Airways Corporation and American Airlines Group, Inc. The defendants seek to transfer this case to the Eastern District of New York ("EDNY") so that it can be litigated alongside three other similar class actions, also arising from the NEA, that are consolidated before the same District Judge. Doc. Nos. 22, 23.[1] Plaintiff Dianne Buehler opposes transfer, preferring to litigate her claims here. Doc. No. 24. For the reasons that follow, the defendants' motion is ALLOWED.

I.   BACKGROUND

The defendants entered the NEA in July 2020. Through the NEA, the defendants implemented codesharing, loyalty reciprocity, revenue sharing, and joint design of an optimized

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header (which may differ from page numbers included elsewhere as part of the original document).

schedule and network touching four airports in Boston and the New York City area.  The United States Department of Justice, joined by several state attorneys general, sued to enjoin the NEA in September 2021, alleging it violated Section 1 of the Sherman Act.  This Court presided over that action ("the DOJ action"), which culminated in a bench trial and was resolved in Findings of Fact and Conclusions of Law entered recently.  See generally United States v. Am. Airlines Grp. Inc., No. 21-cv-11558, 2023 WL 3560430, at *1-3 (D. Mass. May 19, 2023).

After the bench trial in the DOJ action but before this Court issued its decision, plaintiffs seeking to represent classes of passengers traveling through the NEA region filed a series of lawsuits alleging harm arising from the NEA and seeking damages.  The first such action was filed in the EDNY on December 5, 2022, and was assigned to District Judge Ann Donnelly.  See Compl., Berger v. JetBlue Airways Corp., No. 22-cv-7374, ECF No. 1 (E.D.N.Y. Dec. 5, 2022).  The next was filed two days later in the same District.  See Compl., Guerin v. JetBlue Airways Corp., No. 22-cv-7423, ECF No. 1 (E.D.N.Y. Dec. 7, 2022).  The second action was promptly consolidated with Berger and transferred to Judge Donnelly.  See Mem. & Order, Guerin, No. 22-cv-7423, ECF No. 19 (E.D.N.Y. Jan. 13, 2023).  Then came the action presently before this Court, filed by Buehler on February 2, 2023, and designated "related" to the DOJ action.  Doc. Nos. 1, 1-1, 2.  The last such action of which this Court is aware was filed February 15, 2023 in the EDNY.  See Compl., Kupferberg v. Am. Airlines Grp. Inc., No. 23-cv-1220, ECF No. 1 (E.D.N.Y. Feb. 15, 2023).  That action is also now consolidated with Berger and assigned to Judge Donnelly.[2]  See Order, Kupferberg, No. 23-cv-1220 (E.D.N.Y. May 12, 2023).

---

[2] For the remainder of this Order, the Court will refer to the three actions consolidated before Judge Donnelly as "the EDNY Consolidated Action."

2

Citing the "first-to-file rule," the defendants moved on March 16, 2023, to either dismiss this action or transfer it to the EDNY "in deference to the consolidated case" already pending there.[3]  Doc. No. 22.  Buehler opposed the motion, accusing the defendants of "trying to run away from this Court's expertise" and "subordinate[]" Buehler's "thorough and detailed claims" on behalf of a broader class to the "thinner" complaint filed earlier.  Doc. No. 24 at 5.  The defendants replied, Doc. No. 28, and the motion is now ripe.[4]

II.   LEGAL STANDARD

As the First Circuit has long made clear:

> Obvious concerns arise when actions involving the same parties and similar subject matter are pending in different federal district courts: wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs.  To resolve such tensions, courts rely primarily on common sense and historical practice.
>
> Where the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer.  But where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.

TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996) (citations omitted).  These principles have given rise to the first-to-file rule, pursuant to which courts may stay, transfer, or dismiss later-filed actions in deference to proceedings in the case filed first.  Thakkar v. United States, 389 F. Supp. 3d 160, 170 (D. Mass. 2019).  "When deciding whether to apply the [first-to-file] rule, courts must consider" three factors: "(1) which action was filed first; (2)

---

[3] After the three NEA-related actions filed in her District had been consolidated before her, Judge Donnelly entered an order requiring the filing of a consolidated amended complaint to govern the proceedings before her "within 21 days" of "the anticipated transfer" of Buehler's action to her docket.  See Order, Berger, 22-cv-7374 (E.D.N.Y. Mar. 6, 2023).

[4] No party requested a hearing.  Because the parties' papers ably articulate their respective positions and adequately illuminate the issues presented, the Court finds a hearing would be neither necessary nor helpful.

the similarity of the parties; and (3) the similarity of the issues." Waithaka v. Amazon.com, Inc., 404 F. Supp. 3d 335, 350 (D. Mass. 2019), aff'd, 966 F.3d 10 (1st Cir. 2020).

The factors are not rigidly defined, nor is the rule mechanically applied. Jimenez v. Kohl's Dep't Stores, Inc., 480 F. Supp. 3d 305, 306 (D. Mass. 2020). A court presiding over a later-filed action may decide to retain and push forward with a later-filed case if doing so better serves interests of fairness and justice in the relevant circumstances. Thakkar, 389 F. Supp. 3d at 170-71. These determinations fall within a court's broad and inherent power to control its docket and ensure efficient management of its own time, as well as the time and resources of counsel and litigants. Id. at 171 (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).

The presence of class allegations does not render the first-to-file rule inapplicable. See Jimenez, 480 F. Supp. 3d at 306-07; see also Norrid v. D.A.R.P., Inc., No. 17-cv-401, 2018 WL 2977384, at *3 (E.D. Okla. June 3, 2018) (noting the rule "would be illogical and self-defeating if courts could not dispense with second-filed class actions"). Where class actions are concerned, courts have invoked the rule upon finding "substantial overlap . . . in terms of the parties, factual allegations and legal contentions." Cruz-Acevedo v. Unilever U.S., Inc., No. 15-cv-2175, 2016 WL 9460633, at *5 (D.P.R. 2016). The parties in a class action are "sufficiently similar" for purposes of this rule if the defined classes overlap, such that the plaintiffs in one action would be within the class definition alleged in the other. See Thakkar, 389 F. Supp. 3d at 172-73. Issues are "substantially similar" if the two actions "turn on similar determinations of fact and seek to resolve similar legal issues," and if comparable relief is sought by the two classes of plaintiffs. Id. at 173-74. Application of the rule in the class context is in accord with the rule's requirement of "similarity," without demanding complete identity, of parties and legal theories. See Jimenez, 480 F. Supp. 3d at 307.

4

III.   DISCUSSION

Straightforward application of the principles outlined above lead the Court to conclude that transfer of this action to join the EDNY Consolidated Action is plainly appropriate under these circumstances. The question is neither close nor complex.

The parties agree that Berger was the first proposed class action filed against the defendants arising from the NEA. Because it was first, the two similar class actions filed after it in the same District have been added to the EDNY Consolidated Action and transferred to Judge Donnelly, who will preside over all NEA-related class actions that are presently consolidated before her and any others (such as this one) that are later transferred to be added to the consolidated proceedings. As Buehler filed her action two months after Berger, the first factor of the rule is plainly satisfied.[5]

Though Buehler has defined the class she seeks to represent more broadly than the plaintiffs in the EDNY Consolidated Action as it presently exists,[6] that is not a difference that

---

[5] To the extent Buehler implies the DOJ action was the true "first-filed" action arising from the NEA, she is wrong. That action involved an entirely distinct set of plaintiffs and presented different issues. For example, it did not require consideration of class definition, class certification, antitrust injury suffered by private plaintiffs, or calculation of damages. Thus, the DOJ action is not a relevant choice for purposes of the first-to-file rule. Buehler has cited no authority holding otherwise. The case she does cite to suggest this action should not be transferred "away from a related government enforcement action" involved neither the first-to-file rule nor overlapping class actions. Doc. No. 24 at 12 & n.41; see Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharm., Inc., No. 21-cv-12094-FDS, 2022 WL 4486067, at *1 (D. Mass. Sept. 27, 2022) (evaluating request to transfer for convenience under 28 U.S.C. § 1404(a), where actions had been brought by different individual plaintiffs in multiple jurisdictions).

[6] There, the present class definition proposes including customers who purchased tickets from either of the defendants for flights touching an NEA airport in the months since the NEA formed. Here, Buehler wishes to represent a class of customers who purchased tickets from any airline for flights touching an NEA airport in the months since the NEA formed. See Doc. No. 24 at 7-8 (describing class definitions and citing underlying pleadings).

justifies allowing this action to continue here.[7]  The two classes substantially overlap.  As a customer who purchased tickets from one of the defendants for a flight touching an NEA airport, Buehler is a within the presently proposed definition of the class in the EDNY Consolidated Action.  And, as Buehler implicitly concedes, every member of the "narrower" putative class in the EDNY Consolidated Action would also be a member of the class Buehler seeks to represent in this action.  See Doc. No. 24 at 8.  In these circumstances, the Court concludes that the second factor—similarity of the parties—favors application of the first-to-file rule.

Likewise, any differences in Buehler's pleading and the one governing the EDNY Consolidated Action are not sufficiently meaningful to avoid a finding that the actions involve substantially similar issues.  Both actions will likely explore the same universe of underlying facts pertaining to the NEA and the market for air travel in the northeast, similar issues including definition of the relevant antitrust market and evaluation of antitrust injury, and virtually identical requests for damages and other relief.  Though the first two plaintiffs in the EDNY Consolidated Action limited their claims to alleged violations of Section 1 of the Sherman Act, the third EDNY case featured the same Section 2 monopoly claims that Buehler includes in her complaint.  The presence of those additional—but plainly related—claims did not prevent the later EDNY action from being consolidated with the other, nor does it justify proceeding here, separately, in this case.  Cf. Jimenez, 480 F. Supp. 3d at 307 (finding issues substantially similar despite plaintiffs in one class action having pursued only a subset of claims on a class-wide basis).  To the extent Buehler argues her claims are factually or legally broader because she

---

[7] As the defendants correctly observe, the EDNY Consolidated Action contemplates the filing of a further amended complaint, once all similar actions are brought together there.  As such, the class definition and list of claims are not yet finalized, and Bueher will have an opportunity to participate in the process of determining the scope of the amended pleading that will govern the proceedings after all similar actions are consolidated.  See Doc. No. 28 at 2.

incorporated references to testimony in the DOJ action, whereas the other plaintiffs borrowed allegations mostly from the complaint in the DOJ action, she has not explained why such differences amount to more than immaterial variations in pleading strategy.[8]

In sum, the three factors pertinent under the first-to-file rule to determining whether the Court should exercise its discretion and transfer this action as the defendants request each are plainly satisfied here. They point uniformly toward sending this action to the EDNY.

That is not necessarily the end of the analysis. Buehler alternatively urges that "special circumstances" nevertheless "warrant the case remaining here." Doc. No. 24 at 13. To be sure, courts have adopted such a view upon finding that circumstances exist which justify setting aside "the presumption in favor of the first-filed action." Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 16 (D. Mass. 2002). Here, Buehler urges the Court to override the rule for two reasons: 1) because "the parties will benefit from this Court's hard work in the related DOJ Action," and 2) to avoid improperly "reward[ing] a party that cuts corners in order to rush to court." Doc. No. 24 at 13-18. The Court rejects both reasons in this case.

As far as the DOJ action is concerned, the Court finds it is not the kind of "special circumstance" that would warrant keeping this case here. Proceedings before this Court in the DOJ action have nearly concluded. The bench trial was over well before Buehler filed her complaint, and the Court has now rendered its decision. The Court is, of course, well acquainted with the NEA and the evidence that was admitted during the bench trial in the DOJ action. Such familiarity, however, is of questionable relevance when assessing whether one of four NEA-

---

[8] Buehler has not identified facts that are included only in her complaint and are essential to the viability of the legal challenges of any class of plaintiffs arising from the NEA. She has not, for instance, demonstrated that her complaint alleges a fact, the absence of which will lead to the up-front dismissal or ultimate rejection of any claim or theory in the EDNY Consolidated Action.

related class actions should proceed apart from three other substantially similar actions. The EDNY Consolidated Action remains pending before Judge Donnelly, and this Court's resolution of the defendants' motion will not change that. Furthermore, it is far from clear that this Court's experience with the DOJ action would figure prominently in the resolution of the distinct questions presented by consumer class actions arising from the NEA. The Court's experience presiding over the DOJ action does not justify requiring the defendants to simultaneously defend against—and two federal courts to simultaneously oversee—substantially similar claims proceeding separately in different jurisdictions.

Finally, the Court rejects Buehler's attempt to cast the EDNY plaintiffs as careless litigants who rushed to the courthouse in bad faith.[9] Buehler accuses the plaintiffs in the earliest EDNY actions of filing their lawsuits "before any private party had the opportunity to assess the trial evidence" from the DOJ action. Doc. No. 24 at 5; see id. at 6 (suggesting the "public got its first glimpse" of the trial evidence only after trial transcripts were released on the public docket at the end of January 2023). That is simply not true. The trial in the DOJ action proceeded—publicly—over several weeks in September and October 2022. Though some exhibits were sealed, virtually none of the testimony was. The first two EDNY plaintiffs filed their claims after the trial had concluded, and after public versions of the parties' post-trial submissions were docketed. In these circumstances, there is no basis to find that the EEDNY plaintiffs hurried to court "for the sole purpose of winning the race to the courthouse to secure a preferred forum." Holmes Grp., 249 F. Supp. 2d at 16. Thus, no "special circumstances" exist that would allow Buehler to avoid the first-to-file rule here.

---

[9] Likewise, nothing before the Court suggests the defendants' motion to transfer arises from gamesmanship, forum shopping, or any other improper consideration.

IV.     CONCLUSION

Applying the first-to-file rule and the principles underlying it, the Court concludes that transfer of this case to join the EDNY Consolidated Action is appropriate and just.[10] Accordingly, the defendants' Motion to Dismiss or Transfer (Doc. No. 22) is ALLOWED to the extent it seeks an order transferring this action to the Eastern District of New York and is otherwise DENIED.  The Clerk shall promptly initiate the transfer of this action and then terminate proceedings here.

                                                SO ORDERED.


                                                 /s/ Leo T. Sorokin
                                                United States District Judge

---

[10] Transfer, rather than dismissal, is the more prudent option, as it avoids any possible prejudice that might accrue to the plaintiff based on the fact or timing of an order dismissing her action outright.  Cf. Thakkar, 389 F. Supp. 3d at 171 (noting contexts in which "courts have cautioned against dismissing a case outright due to the pendency of a related case").  The determination that transfer is appropriate under the first-to-file rule renders consideration of the alternative request under § 1404(a) unnecessary.